A. C LATHAM and wife v. THE WASHINGTON BUILDING AND
LOAN ASSOCIATION.

*Building and Loan Association--Usury.*

The law will not aid a plaintiff, when plaintiff and defendant are in *pari
delicto* ; *Therefore,* where the plaintiff, who was a member of a build-
ing association and had paid usurious interest upon money borrowed
therefrom, sought to recover it back; *Held,* that he was not entitled to
relief.

(*Mills* v. *The Salisbury B. & L. A.,* 75 N. C. 292 : *King* v. *Winants,* 71
N. C. 469, cited and approved.)

CIVIL ACTION tried at Spring Term, 1877, of BEAUFORT
Superior Court, before *Eure, J.*

Elizabeth J. Latham, the wife of plaintiff, was a member
of the defendant association, and transacted her business
with the same through her husband. She continued to pay
dues of one dollar per month, on each share of stock owned
by her, until the first Monday in October, 1872, as required by
the by-laws of the association. At that date she borrowed
of the association $204 for which she executed a bond for $400
with the written assent of her husband, conditioned that she
should pay four dollars per month on two shares, until the
regular dues paid thereon and the dividends arising there-
from, shall have paid to the association $400. This bond
was secured by mortgage on a house and lot in the Town of
Washington with a power to sell the same in default of pay-
ment as aforesaid. On the 3d of December, 1872, she re-
ceived $312 more and executed a bond for $700 similar to
the above for the payment of six dollars per month on each
share, and this was secured by a second mortgage with like
condition as above on the said house and lot. It was the
custom of the association to put up its money for sale in lots
of $200 and the bidding was restricted to its members. The

highest bidder received $200 less the per centage bid. The said sum of $312 was $600 (the amount of the stock sold) less the per centage bid by the plaintiffs. There were two other sums received by the plaintiffs at subsequent times and in the manner aforesaid for which bonds were given and mortgages executed on the property to secure the payment of the same.

In August, 1876, the association adopted the following resolution; "That the Secretary be instructed to state the account of each member of the association who has stock redeemed, charging interest at the rate of six per cent per annum, on the sum of money received in redeeming, giving credit for all dues paid in, either as dues, interest, or fines, and charging to each share of stock its quota of expenses and losses." Upon stating the accounts, it was ascertained that the plaintiffs had overpaid to the amount of $92.06. The association was winding up its business under said resolution, and the plaintiffs brought an action for the recovery of said amount alleged to be due them, insisting that the contract was usurious and that said payment had been made under a mistake of fact.

A jury trial being waived, His Honor found that the payment was not made under a mistake of fact, and that the assets of the association would not be sufficient to pay the present stockholders the amounts they had paid in; and held that the facts did not disclose a usurious contract. There was judgment that the action be dismissed, from which the plaintiffs appealed.

*Mr. D. M. Carter*, for plaintiffs.
*Messrs. Jas. E. Shepherd* and *Gilliam & Pruden*, for defendant.

READE, J. In *Mills* v. *The Salisbury Building and Loan Association*, 75 N. C. 292, it was decided that that associa-

tion, which was substantially like the association in this case, was not such as was contemplated by the statute under which it and this were organized. And that its contracts with those who dealt with it under its by-laws and regulations could not be supported by the Courts. And because such associations were numerous and embraced a large amount of capital and business transactions, it was suggested that their existing contracts should be settled upon a liberal and just basis, and that the future transactions should conform to law. And it is to the credit of the defendant association that it immediately adopted a resolution in conformity to that suggestion.

There is no doubt that the by-laws and course of dealings of the defendant were unlawful, and its dealings with the plaintiffs were unlawful and usurious. And if at any time the plaintiffs had repudiated the association and the association had sought the aid of the Court to enforce the contract, the Court would have refused its aid. But whatever the defendant association was, these plaintiffs were; for they were parts and parcels of it, and the Court will no more aid them against the defendant than it would have aided the defendant against them. They are in *pari delicto.* Whatever hardship the association has practiced upon them, it has probably with their aid and for their advantage practiced upon others of its members. Whatever has been *executed* must therefore stand. The Court will not undo it.

It is found as a fact in the case that the plaintiffs paid under no mistake of fact. They might have repented of their connection with the unauthorized association and refused compliance with their undertaking; and if the association had attempted to coerce them, the Courts would have enjoined it, as in *Mills* v. *Salisbury, supra.* But having engaged the adventure and voluntarily paid the loss, they cannot ask the Courts to afford them the luxury of recovering it back. A gambles with B and loses money.

The Courts will not compel him to pay.    But if he pay his losses, the Courts will not enable him to recover them back. *King* v. *Winants*, 71 N. C. 469.

No error.

.PER CURIAM.                                   Judgment affirmed.